18-514 (L)
*Deferio v. City of Syracuse*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of May, two thousand nineteen.

PRESENT:    BARRINGTON D. PARKER,
            DENNY CHIN,
            SUSAN L. CARNEY,
                    *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JAMES DEFERIO,

                    *Plaintiff-Appellant,*

            v.                                      18-514 (L)*; 18-516 (XAP)

CITY OF SYRACUSE,

                    *Defendant-Appellee,*

JOSEPH SWEENY, individually and in his official capacity as Captain for the City of Syracuse Police Department, JAMEY LOCASTRO, individually and in his official capacity as Sergeant for the City of Syracuse Police Department, FRANK FOWLER, in his official capacity as Chief of Police for the City of Syracuse Police Department,

                    *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

* The Lead appeal, 18-514, was dismissed on June 18, 2018.

FOR PLAINTIFF-APPELLANT:  NATHAN W. KELLUM, Center for Religious Expression, Memphis, Tennessee.

FOR DEFENDANT-APPELLEE:  TODD M. LONG, Office of the Corporation Counsel, City of Syracuse, Syracuse, New York.

FOR AMICUS CURIAE INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION:  Shannon T. O'Connor, Goldberg Segalla LLP, Syracuse, New York.

Appeal from the United States District Court for the Northern District of New York (Kahn, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiff-appellant James Deferio appeals from a judgment, entered February 6, 2018, to the extent it dismissed his claims against defendant-appellee City of Syracuse (the "City"). Deferio asserted constitutional claims against the City and three Syracuse police officers for violating his First and Fourteenth Amendment rights by requiring him to move from one side of the street to the other when he was seeking to express his religious views (about Christianity) during gay pride celebrations in June 2014 and June 2015 (the "Pride Festivals") organized by CNY Pride Inc. ("CNY Pride") and conducted pursuant to City permits.

Following the parties' cross-motions for summary judgment, on January 31, 2018, the district court granted the motions in part and denied them in part. The district court held as a matter of law that the two of the three police officers -- Sergeant

James Locastro and Captain Joseph Sweeny -- violated Deferio's clearly established rights under the First Amendment by restricting his speech and awarded him nominal damages of $1.00 against them. The district court further held, however, that the City was entitled as a matter of law to dismissal of Deferio's municipal liability claims, concluding that Deferio had failed to present evidence that the City had adopted any unconstitutional policy that caused a violation of his First Amendment rights.[1] The district court also ruled that Deferio was not entitled to a permanent injunction.

On appeal, Deferio presents two challenges: (1) the district court erred in concluding that the City was not subject to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); and (2) he was entitled to a permanent injunction prohibiting the City from restricting his religious expression on public sidewalks during future Pride Festivals. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

## I. *Standard of Review*

We review a district court's decision on cross motions for summary judgment *de novo*, construing the evidence with respect to each motion in the light most favorable to the non-moving party. *Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001); *see also Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000). "Summary

---

[1] The claims against the third officer were dismissed. Sweeny and Locastro filed a notice of appeal, but their appeal was dismissed after they failed to file an appellate brief.

judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011) (internal quotation marks omitted). Further, we review a district court's denial of a request for a permanent injunction for abuse of discretion. *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 911 F.3d 104, 108 (2d Cir. 2018) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).[2]

## II.    *Discussion*

### A.    *Municipal Liability*

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must demonstrate that the deprivation of his constitutional rights was "caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 690-91). The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality, *Turpin v. Mailet*, 619 F.2d 196, 199 (2d Cir. 1980); (2) actions directed by the government's "authorized decisionmakers" or "those

---

[2]    Deferio argues that this Court reviews a district court's decision to deny injunctive relief *de novo* when it pertains to a First Amendment claim. While this Court does review a district court's legal conclusions *de novo* when reviewing an order granting a permanent injunction regarding First Amendment violations, we review "its ultimate decision" for abuse of discretion. *Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 127 (2d Cir. 2015) *vacated on other grounds by* 137 S. Ct. 1144 (2017); *see also Open Soc'y*, 911 F.3d at 108; *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012).

who establish governmental policy," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware, *see Turpin*, 619 F.2d at 199; or (4) a "constitutional violation[] resulting from [policymakers'] failure to train municipal employees," *City of Canton v. Harris*, 489 U.S. 378, 380 (1989). Once a plaintiff has demonstrated the existence of a municipal policy, a plaintiff must then establish a causal connection, or an "affirmative link," between the policy and the deprivation of his constitutional rights. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985); *accord Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (holding that plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged").

Deferio argues that here the City "creat[ed], maintain[ed], and enforce[d] a permit zone policy that grants a private permittee [CNY Pride] of a popular public event censorial control over words uttered on open and accessible public sidewalks bounding the event." Appellant's Br. at 20. He contends that this policy -- which he claims gives "proprietary control" to a private entity over public city sidewalks, *id*. at 23 -- gives rise to municipal liability under *Monell* because it was (1) formalized in writing through a training bulletin promulgated by the Chief of Police to the Syracuse police department; (2) ratified by policy-making officials; and (3) part of a persistent and widespread pattern that was enforced as a custom. We are not persuaded.

First, while the Police Chief's 2016 training bulletin set forth an official policy, it simply did not set forth the policy that Deferio contends violated his constitutional rights. The bulletin explains that officers assigned to patrol a permitted event must carry a copy of the permit "in order to enforce the designated boundaries of the permitted event." App'x at 143. The bulletin does not set forth a policy that grants "proprietary control" to a private entity: it says nothing about granting permittees the right to exclude individuals based on their views. Instead, the bulletin merely provides that permits are required for assemblies and parades in streets, describes how permits can be acquired, and explains that permits are required to help officers "discharge their duties" in protecting the public and coordinating any "emergency services to the community." App'x at 143. To the extent the bulletin shows that some permits may cover sidewalks, that alone does not establish an unconstitutional policy because a municipality is not per se barred from restricting protected speech on sidewalks or other public fora. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 341 (2d Cir. 2010) (holding that government may apply content-neutral time, place, manner restrictions if they are narrowly tailored to serve significant government interests and alternative channels of communication are available). Therefore, the training bulletin was not, as Deferio contends, the cause of any First Amendment violation.

Second, Deferio failed to present any evidence from which a jury could find that any policy-making official ratified a policy that gave "proprietary control" over public sidewalks to a private entity. The two permits did not give CNY Pride "proprietary control" over public sidewalks. The first permit provided for "no speakers @ sidewalks," without regard to content, and apparently was intended simply to bar amplification devices on the sidewalks. Supp. App'x at 1158. In any event, no authoritative policymaker endorsed Locastro's interpretation that the permit barred Deferio from expressing his views by the Pride Festival's entrance. The second permit did give CNY Pride "exclusive control" over certain areas, but only "for the limited purpose of allowing exclusive use of sound amplification and access to the festival." *Id.* at 382. Moreover, the district court noted that "Captain Sweeny did not merely enforce the words of the permit," but he went beyond the terms of the permit by imposing even greater restrictions on Deferio's speech. App'x at 203.

Third, Deferio has not identified a persistent or widespread practice that would rise to the level of a custom for purposes of *Monell* liability. Although a policy need not be formalized or unconstitutional on its face to meet the *Monell* standard of municipal liability, Deferio fails to demonstrate that officers habitually or customarily invoked any policy to systematically violate constitutional liberties. *See Pembaur*, 475 U.S. at 480-81; *Jones*, 691 F.3d at 81; *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). The officers' invocation of permits on two occasions to restrict Deferio's First

Amendment rights do not together constitute a pattern or custom which is "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992) (finding that survey conducted by appellant which revealed four allegedly discriminatory terminations of female employees, and other allegedly discriminatory treatment, cannot alone have constituted a custom); *Turpin*, 619 F.2d at 202 (holding that policy cannot "ordinarily be inferred from a single incident of illegality," and even multiple incidents, without more, do not create custom). Nor did Deferio allege or otherwise argue that the officers' conduct was directed at anyone else, which further undercuts Deferio's contention that Syracuse had a custom or practice of infringing on constitutional rights. *See, e.g., St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988) (finding plaintiff's failure to allege relevant conduct "was ever directed against anyone other than himself" supported conclusion City could not be held liable under *Monell*).

Because Deferio failed to demonstrate the existence of a formalized City policy, a policy ratified by the City's decisionmakers, or a custom that caused his constitutional injury, the district court properly concluded the City is not subject to *Monell* liability.

**B.** *Permanent Injunction*

Deferio argues that he was entitled to permanent injunctive relief prohibiting the City from restraining his future religious expression during Pride

Festivals, but that argument fails.  To obtain a permanent injunction, a plaintiff must "succeed on the merits and show the absence of an adequate remedy at law and irreparable harm if the relief is not granted."  *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (citation and internal quotations marks omitted).  Here, the district court did not err in denying Deferio's request for permanent injunctive relief because Deferio did not succeed on the merits, as he failed to show that the City violated his First Amendment rights regarding his religious expression.  Thus, we need not decide whether there is an adequate remedy at law or a chance of irreparable harm absent relief, and Deferio is not entitled to permanent injunctive relief.

\*    \*    \*

We have considered Deferio's remaining arguments and find them to be without merit.  Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk